UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERRI JOHNSON,<br>　　　　Plaintiff,<br>　v.<br>NANCY A. BERRYHILL,<br>　　　　Defendant. | Case No. 4:17-cv-06433-KAW<br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; ORDER DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 23, 30 |

Plaintiff Kerri Johnson seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for payment of benefits, or, in the alternative, for further proceedings.

Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment, and DENIES Defendant's cross-motion for summary judgment.

## I. BACKGROUND

On November 3, 2014, Plaintiff protectively filed an application for social security disability benefits under Title II of the Social Security Act, with an alleged onset date of March 28, 2014. Administrative Record ("AR") 15. The claim was denied on April 1, 2015. AR 82-86. A request for reconsideration was filed on April 21, 2015. AR 113. That request was denied on August 4, 2015. AR 15; 114-118. On September 17, 2015, Plaintiff filed a written request for review of decision hearing. AR 119-33. A hearing was held before Administrative Law Judge ("ALJ") Robert Milton Erickson on January 10, 2017. AR 15-29. At the hearing, Kweli Amusa, a medical expert, and Jose Chaparro, a vocational expert, testified. AR 15.

Plaintiff is fifty-six years old, and has a high school education. AR 27. Plaintiff has not been engaged in substantial gainful activity since March 2014, and resides with her teenage son. AR 20. At the hearing, Plaintiff testified that she had previously worked as a restaurant server. AR 27, 60, 63.

On March 7, 2013, Plaintiff, recently diagnosed with pancreatitis, presented for a re-evaluation and recommendations for abdominal pain with nausea and vomiting. AR 341. She reported that her pain interfered with her ability to sleep during the night and that the pain medications gave her minimal improvement. *Id.* She reported consuming alcohol four-to-five nights per week to help with sleep. *Id.* On examination, she had epigastric tenderness with deep palpation. AR 342. Her chronic pancreatitis was likely to remain chronic, and Methadone, Gabapentin, Norco, and Tramadol medications were prescribed for pain. *Id.*

On May 16, 2013, Plaintiff presented to UCSF Medical Center for an appointment with Amy Smolinski, NP. AR 347. Plaintiff had been diagnosed with hepatitis C virus as a young adult, but had never received treatment. AR 348. She had multiple emergency room visits due to her diagnosis of pancreatitis, which caused abdominal pain, nausea, and vomiting. *Id.* On exam, she was tearful and appeared to be in pain with changing positions. AR 348. She reported sleep disturbance, dysphoric mood, and agitation, and she was noted to be nervous and anxious during the appointment. *Id.* Nurse Smolinski assessed chronic neck and back pain; chronic pancreatitis; depression and anxiety; hypertension; hepatitis C virus for 30 years; hyperlipidemia; brain lesion at pineal gland; and skin and nail alterations. AR 349.

On August 30, 2013, Plaintiff presented to USCF for an evaluation of abdominal pain and saw Derrick Y. Siao, M.D. AR 355. She had constant mid-epigastric pain and rectal prolapse due to constipation side effects of pain medications. *Id.* Previous CT scans showed findings consistent with mild chronic pancreatitis and an upper endoscopy showed mild gastritis. AR 357. A referral was made for pain management and consideration for invasive options, such as celiac plexus block or possible sphincterotomy. AR 358.

On September 20, 2013, Plaintiff reported to Nurse Smolinski that her pain had worsened in the last months, appeared to be in distress, and was tearful at times during the appointment. AR

358.

On November 8, 2013, Plaintiff followed up for pain management with anesthesiologist George William Pasvankas, M.D. AR 360. She had recently been discharged from the hospital due to acute-on-chronic pancreatitis, at which time her medications were increased, but she reported minimal benefit to the pain medications. *Id.* CT Abdomen/Pelvis scans showed acute pancreatitis involving the pancreatic head with associated fluid in the pancreaticoduodenal groove and reactive inflammation of the adjacent duodenum and hepatic flexure. *Id.* Dr. Pasvankas noted that her pancreatitis was beyond the acute phase and it would be reasonable to convert 70% of her opioid medication to chronic form. AR 365. Her Methadone was increased to 10 mg and her Oxycodone was decreased to 120 mg. *Id.* On the same day, cervical epidural steroid injection was administered for neck pain. *Id.*

On January 27, 2014, Plaintiff presented to UCSF for abdominal pain. AR 373. She reported a constant, sharp epigastric discomfort, which radiated diffusely and was occasionally severe enough that she could not stand up straight. AR 374. Oxycodone helped her pain, but it made her constipated, which caused rectal prolapse. *Id.* She reported that she had stopped drinking, despite having a history of drinking 6-9 alcoholic beverages per week. *Id.* On examination, she had diffuse tenderness. AR 375. Assessment included history of hepatitis C without cirrhosis, neck and back pain on narcotics, constipation, depression, and epigastric abdominal pain. AR 376. Gabapentin was increased for pain. *Id.*

On May 7, 2014, Plaintiff reported severe epigastric abdominal pain, which had worsened in the previous weeks. AR 389. She reported that Methadone and Oxycodone were only helpful for 45 minutes and Lyrica made her feel unsteady. *Id.* She had recently fallen down the stairs and cut her left leg and wanted to stop Lyrica and restart the Gabapentin *Id.* She reported continued worry about her memory problems, and was tearful during her appointment. *Id.* Assessment included chronic pancreatitis with strong pain, anxiety and depression, chronic neck and back pain, knee pain with complete medial meniscus tear, bilateral epicondylitis, hepatitis C virus, and chronic constipation and rectal problems. AR 390.

On June 10, 2014, Plaintiff presented to UCSF for an appointment with Dr. Singh for

3

chronic pancreatitis. AR 393. She had constant, dull epigastric pain for more than two years. *Id.* She had failed a trial of neuropathic medications and pancreatic enzymes. AR 394. A recent celiac plexus block was administered for pain relief, but it did not improve her symptoms. *Id.* Her abdominal pain was constant, sharp, and radiated diffusely, which was occasionally so severe that she could not stand up straight. *Id.* On June 27, 2014, Plaintiff reported no improvement in pain control, despite increasing her dose of medications. AR 397. She appeared distressed, frustrated, and in pain at her appointment. *Id.*

On June 27, 2014 and July 30, 2014, Nurse Smolinski noted mild cognitive impairment and chronic pancreatitis with strong pain. AR 397-99.

On August 29, 2014, Plaintiff was admitted to UCSF Medical Center due to acute-on-chronic pancreatitis. AR 285. She reported cramping, mid-epigastric abdominal pain, nausea, and vomiting and she did not respond to her prescribed pain medications. AR 286. Plaintiff's pancreatitis flare was much worse than the flares she had previously. *Id.* Diagnoses were acute-on-chronic pancreatitis, elevated aminotransferases, hypertriglyceridemia, depression, and hypertension. AR 287. She was discharged on August 31, 2014. AR 286.

On October 1, 2014, Plaintiff followed up with Nurse Smolinski. AR 316. Plaintiff's right abdominal pain had returned, which she characterized as "very strong," daily, abdominal pain *Id.* She used an extra 30 mg of morphine 4-8 times last month for severe pain. *Id.* Plaintiff was also taking Zofran every 1-2 days to help with nausea and vomiting. *Id.*

On November 25, 2014, Plaintiff was evaluated by Andrew Posselt, M.D. to determine whether she was a candidate for a potential total pancreatectomy to treat her chronic pancreatitis. AR 412-15. Sphincterotomy and/or stent placement, as well as laparoscopic cholecystectomy and total pancreatectomy with transplantation were discussed for surgical intervention. AR 415. Dr. Posselt referred Plaintiff to another doctor for further evaluation. *Id.*

On February 6, 2015, Nurse Smolinski noted that Plaintiff had abdominal bloating and her abdomen was distended with a girth of 38 inches. AR 446. She had bilateral ankle swelling, which fully resolved within a few days. *Id.* Assessment was chronic abdominal pain, most likely related to chronic pancreatitis with a recent pancreatic duct stent removal. AR 447. Plaintiff was

prescribed MS Contin 60 mg, three times daily; Oxycodone 15 mg, every 2 hours; and Gabapentin 300 mg for pain. *Id.*

On February 12, 2015, Plaintiff underwent an internal medicine consultative evaluation with Rose Lewis, M.D. AR 433-38. Plaintiff reported that in January 2013 she developed pancreatitis, which was not alcohol induced. AR 435. She reported a great deal of abdominal pain as well as bloating, but no nausea or vomiting. *Id.* There was no etiology as to the reason for the pancreatitis, which was recurrent. *Id.* She reported going to a pain management clinic for back and neck pain, and her treatment had included steroid injections. *Id.* Plaintiff had a lumbar laminectomy in 2006 for degenerative disc disease, and was involved in a motor vehicle accident in 2009, which caused subsequent pain in her neck and lower back. *Id.* Plaintiff reported that she could stand, walk, and climb a flight of stairs without difficulty. *Id.* The claimant reported wearing an elastic support on her right knee and noted that her knee frequently swelled. *Id.* She gave a history of a torn medial meniscus, but said surgery had been delayed because of her pancreatitis. *Id.* Plaintiff reported being able to take care of her own personal needs, including all household chores, such as vacuuming, mopping, sweeping, dusting, laundry and dishes. Plaintiff reported sleeping mostly during the day. *Id.* Plaintiff denied drinking alcohol or having a history of heavy alcohol consumption, but admitted that she smokes a half pack of cigarettes a day and has done so for the past 35 years. AR 436. Dr. Lewis observed Plaintiff sitting comfortably, and saw that she was able to get on and off the examination table without difficulty. *Id.* She was also able to put on and take off her shoes without problems. *Id.* The physical examination demonstrated a very bloated abdomen with medial hepatomegaly. *Id.* She was able to do tandem as well as toe and heel walking without difficulty. AR 437. Motor strength and sensation was intact in the bilateral upper and lower extremities. *Id.* Range of motion of the lumbar and cervical spine, as well as the right knee, were normal. *Id.* Dr. Lewis opined that Plaintiff was capable of performing medium work with frequent climbing, and could stand and walk up to six hours, and could sit without limitation. AR 438.

On February 20, 2015, Dr. Kobashi noted that recent FibroSure testing (1/30/2015) score was consistent with cirrhosis of the liver. AR 448. Plaintiff continued to have abdominal swelling,

which had worsened in the previous two weeks. *Id.* On examination, she had a moderately distended abdomen *Id*. Dr. Kobashi's diagnosed Plaintiff with chronic abdominal pain, and chronic hepatitis C virus. *Id.* Her abdominal pain was chronic and worsening. *Id.* Her bloating and abdominal pain could have been related to hepatic congestion, which could be due to hepatitis C cirrhosis of the liver. *Id.*

On April 10, 2015, Nurse Smolinski noted that Plaintiff reported baseline flares of pain with even simple chores. AR 449. Specifically, Plaintiff reported that her pain had worsened, and she was now experiencing swelling in her lower extremities due to her activities of daily living, such as laundry and chores, as well as using stairs. *Id.* Her strong abdominal pain and back pain continued. *Id.* On examination, her abdominal girth was 37.5 inches. AR 450. Assessment included chronic abdominal pain, which was most likely related to pancreatitis. *Id.*

On August 23, 2015, Plaintiff presented for an appointment with transplant hepatologist Monika Sarkar, M.D. for decompensated cirrhosis and portal hypertension management options. AR 815, 826. Plaintiff had newly decompensated hepatitis C virus cirrhosis, genotype 1b, and underwent 12 weeks of Harvoni treatment from May 22, 2015 to August 13, 2015, and her viral load was negative on August 14, 2015. AR 815. Plaintiff was weaned off of diuretics for her abdominal swelling, and her hyponatremia had resolved. *Id.* The Fibroscan showed cirrhosis with portal hypertension. AR 826. She was not a candidate for liver transplantation due to continued alcohol use. AR 827. Possible cholecystectomy surgery was deferred, because the surgery was too risky due to decompensated cirrhosis with portal hypertension. AR 826. Dr. Sarkar's impression was that Plaintiff had chronic hepatitis C cirrhosis, chronic pancreatitis, and alcohol use. AR 826-27.

As Plaintiff's treating medical provider, Nurse Smolinski completed a medical source statement on February 19, 2016, which was co-signed by Dr. Kobashi. AR 512-514. She had treated Plaintiff since May 2013, seeing her every one-to-three months. AR 512. Plaintiff's diagnoses were chronic pancreatitis, chronic back pain, pelvic pain, hip pain, and knee pain. *Id.* Nurse Smolinski noted that Plaintiff was also being seen by a pain specialist, orthopedist, liver specialist, and gastroenterologist. *Id.* Symptoms included daily abdomen, back, neck, pelvis, and

joint pain, fatigue, as well as nausea and vomiting. *Id.* Nurse Smolinski opined that Plaintiff could sit for a total of 4 hours out of an 8 hour work day. *Id.* She could stand and walk for a total of 2 hours out of an 8 hour work day. AR 513. She could rarely lift 21-50 pounds, occasionally lift 11-20 pounds, and frequently lift 10 pounds or less. *Id.* Plaintiff could occasionally bend, squat, and reach above shoulder level. *Id.* She could use her hands continuously. *Id.* Pain would affect her concentration, persistence, and pace to such an extent that it would seriously interfere with her ability to perform simple, routine work on a regular basis. AR 514.

On April 13, 2016, Plaintiff presented for a visit with Nurse Smolinski. AR 546. Plaintiff described her pancreatic pain as the same or worse. AR 546. She had continued to have swelling in her abdomen. *Id.* Plaintiff reported walking her dog in the park twice daily, which required walking down four flights of stairs and then walking to the park four blocks away. *Id.*

On August 22, 2016, Plaintiff presented for a visit with Nurse Smolinski, and reported having hallucinations. AR 563. Plaintiff had recent falls, and, on one occasion, thought she had consumed lemonade, but she had actually drank Mr. Clean cleaning liquid. Plaintiff's severe abdominal pain continued and she reported two episodes of severe abdominal pain in the last weeks, which were worse than usual. *Id.* Nurse Smolinski noted diagnoses of delirium, chronic hepatitis C cirrhosis with portal hypertension, chronic abdominal pain, and anxiety. AR 564.

On August 31, 2016, Nurse Smolinski noted that Plaintiff's continued delirium could be related to cirrhosis, high opioid dose or her family history of early dementia. AR 567. She had mild elevated ammonia and mild volume loss on brain MRI. *Id.* She had started Lactulose, which was used to reduce ammonia in the blood stream due to cirrhosis. *Id.*

On September 7, 2016, Plaintiff presented to an appointment with neurologist Kevin Kennan, M.D. due to her delirium and hallucinations. AR 568. Plaintiff reported experiencing auditory hallucinations for the past three months, which caused her to interact with people who were not there, such as deceased family members and friends, and she often fell asleep in random places. AR 568-69. Also, she reported episodes in which she had believed she was at a campfire with family when was cooking in her own kitchen, and she consumed cleaning liquid on accident on one occasion. AR 569. On neurological examination, her auditory hallucinations and

7

fluctuations in alertness were consistent with delirium rather than neurodegenerative disorder. AR 574. Hepatic encephalopathy was a possible diagnosis, given her elevated ammonia and anti-cholinergic side effects from Hydroxyzine medication. *Id.* Dr. Keenan wrote an Attestation and noted that Plaintiff's elevated ammonia levels and her "clinical picture" were consistent with hepatic encephalopathy, and her auditory hallucinations were likely a manifestation of same. AR 575. The neurologist recommended she decrease the large amount of narcotic medications she was taking. *Id.*

On September 21, 2016, Dr. Sarkar reported new altered mental status due to hallucinations. AR 593. She continued to have chronic abdominal pain and bloating. *Id.* Since her last visit, Plaintiff developed hallucinations and altered mental state, which, combined with her sleep cycle reversal, was consistent with hepatic encephalopathy. *Id*.

On December 12, 2016, Nurse Smolinski completed a second medical source statement. AR 522-24. Nurse Smolinski continued to see Plaintiff every one-to-three months. AR 522. Since her last assessment, Plaintiff had been diagnosed with cirrhosis of the liver. *Id.* Plaintiff continued to have problems with concentration and poor memory related to hepatic encephalopathy for the previous 4-6 months. AR 524. She continued to have severe, chronic abdominal pain and she had frequent falls in the last 4-6 months, which had worsened. *Id.* Nurse Smolinski opined that Plaintiff Johnson could sit for a total of 8 hours out of an 8 hour work day. AR 522. She could stand and walk for a total of 3 hours out of an 8 hour work day. AR 523. She could rarely lift 11-20 pounds and occasionally lift 10 pounds or less. *Id.* She could never bend, rarely squat, and frequently reach above shoulder level. *Id.* She could occasionally perform simple grasping, fine manipulation; occasionally use keyboard; and rarely perform forceful grasping and pushing and pulling. *Id.* She had weakness in her hands due to encephalopathy. AR 524. Nurse Smolinski opined that pain would affect Plaintiff's concentration, persistence, and pace to such an extent that it would seriously interfere with her ability to perform simple, routine work on a regular basis. *Id.* Nurse Smolinski further incorporated her progress notes from the December 12, 2016 clinic visit, which provided that Plaintiff reported more swelling in her legs recently, and that her neck and back pain flares have limited her mobility by making it more difficult to climb stairs and complete

1 household tasks, such as laundry. AR 525. Plaintiff reported that steroid injections help with the
2 pain, but that she is only able to get them every three months, and the relief only lasts for
3 approximately six weeks. *Id.*

4 An unfavorable decision was issued on May 17, 2017. AR 15-29. A request for review of
5 the hearing decision was filed with the Appeals Council on May 23, 2017. AR 170-71. On
6 October 4, 2017, the Appeals Council denied Plaintiff's request for review. AR 1-6. On
7 November 3, 2017, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C.
8 §405(g). (Compl., Dkt. No. 1.)

9 On April 25, 2018, Plaintiff filed a motion for summary judgment. (Pl.'s Mot., Dkt. No.
10 23.) On June 29, 2018, Defendant filed an opposition and cross-motion for summary judgment.
11 (Def.'s Opp'n, Dkt. No. 30.) No reply was filed, so the motion is fully briefed.

## II. LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under Social Security Administration ("SSA") regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment

9

or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof in steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner in step five. *Id.* at 954.

### III. THE ALJ'S DECISION

As an initial matter, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act as of December 31, 2018. AR 17.

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since March 28, 2014, the alleged onset date. AR 17.

At step two, the ALJ found that Plaintiff had the following severe impairments: pancreatitis, degenerative disc disease of the lumbar and cervical spine, degenerative joint disease of the right knee, hepatitis C, gallstones, depression, anxiety, alcohol, and opioid abuse. AR 17.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1. AR 18.

Before considering step four, the ALJ determined that Plaintiff has the residual functional

10

capacity to perform medium work, as defined in 20 C.F.R. § 404.1567(c), with the following modifications: she can stand or walk for six hours in an eight-hour workday; there are no restrictions in sitting; she "can perform no more than frequent climbing of any kind;" she is capable of constant, simple repetitive tasks, but only occasional detailed tasks; and she has no restrictions in interacting with the public, coworkers or supervisors. AR 19.

At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work. AR 27. Lastly, at step five, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, such that she was not disabled for the purposes of the Social Security Act. AR 28.

## IV. DISCUSSION

In her motion for summary judgment, Plaintiff argues that the ALJ erred in denying her application for social security benefits and that the case should be remanded for payment of benefits or, alternatively, for further proceedings, for three reasons: 1) the ALJ erred at Step Two by failing to include Cirrhosis of the Liver and Hepatic Encephalopathy among Plaintiff's severe impairments; 2) the ALJ erred by assigning more weight to the opinion of the non-examining state consultants and examining consultants than that of the plaintiff's treating nurse practitioner, Amy Smolinski, NP; and 3) the ALJ erred in discrediting and ignoring the evidence in the treatment notes and selectively relying on records indicating improvement and relatively intact daily activities. (Pl.'s Mot. at 4.)

### A. The ALJ may have erred by failing to include Cirrhosis of the Liver and Hepatic Encephalopathy among Plaintiff's severe impairments.

The ALJ found that the medical evidence established that Plaintiff had limitations in her capacity to perform basic work activities due to her severe physical and mental impairments, which included pancreatitis, degenerative disc disease of the lumbar and cervical spine, degenerative joint disease of the right knee, hepatitis C, gallstones, depression, anxiety, as well as alcohol and opioid abuse. AR 17.

Plaintiff contends that the ALJ erred by failing to include Cirrhosis of the Liver and Hepatic Encephalopathy as severe impairments. (Pl.'s Mot. at 15.) Defendant argues that "the

11

relevant question is not whether the ALJ should have found Plaintiff's cirrhosis and hepatic encephalopathy to be severe, but instead whether the RFC determination was supported by substantial evidence." (Def.'s Opp'n at 2.)

Ignoring medical evidence of other impairments without providing any reason for doing so is legal error. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996) (citing *Cotton v. Bowen*, 799 F.2d 1403, 1408-09 (9th Cir. 1986)(legal error where ALJ's findings completely ignore medical evidence without giving specific, legitimate reasons for doing so)). While the ALJ is supposed to consider all of the claimant's impairments, including severe and non-severe impairments, any omission at step two is harmless if the limitations posed by the impairment are considered at step four, which requires a residual functional capacity ("RFC") assessment that includes all of the claimants impairments. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)

Defendant contends that the ALJ considered Dr. Amusa's testimony at the hearing, which specifically addressed cirrhosis and encephalopathy. (Def.'s Opp'n at 2)(citing AR 55-58.) While the ALJ noted that it was Dr. Amusa's opinion that Plaintiff has mild cirrhosis in connection with Hepatitis C, the ALJ gave her opinion little weight. AR 24. Also, despite generally citing to Exhibit 12F, where cirrhosis was noted in the treatment records, the ALJ does not mention cirrhosis outside of his acknowledgement of Dr. Amusa's opinion. *See* AR 23-24, 804, 809. Instead, the ALJ appears to be using hepatitis C and cirrhosis interchangeably, and vaguely refers to Plaintiff as having "liver disease." AR 21, 23. Even though Dr. Amusa's opinion was afforded little weight, she testified that Plaintiff's mild cirrhosis resulted in swelling in Plaintiff's lower extremities, which was currently being treated with diuretics. AR 55. At the time of the hearing, Plaintiff continued to experience swelling despite her viral load from hepatitis C being otherwise undetectable. *See* AR 27, 55, 69. She specifically testified that she experienced "incredibly painful" flareups in her legs every three months. AR 69.

In supporting the residual functional capacity ("RFC") assessment, the ALJ concluded that Plaintiff had "intact gait" and "normal sensation and strength in the upper and lower extremities." AR 27. The ALJ acknowledged that Plaintiff was taking diuretics at the time of the hearing, on January 10, 2017, despite having also concluded that the swelling in her left leg had resolved in

12

2015. AR 20, 23. As a result, the ALJ did not address what effect, if any, Plaintiff's remaining swelling in her lower extremities due to cirrhosis, even if managed with diuretics, had on her residual functional capacity.

The ALJ similarly fails to mention hepatic encephalopathy, which was noted in Nurse Smolinkski's notes, as well as in the notes of Drs. Keegan and Sarkar. AR 526, 575, 593. While this was also briefly addressed in Dr. Amusa's testimony, the ALJ did not address what effect, if any, this condition had on Plaintiff's RFC.

Accordingly, the ALJ's failure to address these two impairments requires that the case be remanded for further proceedings, and the Commissioner must consider Plaintiff's cirrhosis diagnosis, and the resulting symptoms, as well as hepatic encephalopathy in determining whether they qualify as severe impairments at step two, and to what extent the attendant symptoms affect her RFC.

### B. The ALJ erred by assigning more weight to the opinion of non-examining sources and an examining consultant than to Plaintiff's treating nurse practitioner.

The opinions of treating medical sources may be rejected only for clear and convincing reasons if not contradicted by another doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where the record contains conflicting medical evidence, the ALJ must make a credibility determination and resolve the conflict. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quoting *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence...." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citations omitted).

A nurse practitioner, however, is an "other" medical source, which requires the ALJ to provide germane reasons to discount the medical opinion of a treating nurse practitioner. *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017) (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th

13

Cir. 2012)).

Here, Plaintiff argues that the ALJ did not provide clear and convincing reasons for preferring the opinion of the examining state consultants and non-examining state consultants over the opinions of Plaintiff's treating nurse practitioner Amy Smolinski. (Pl.'s Mot. at 21.) In opposition, Defendant contends that the ALJ properly rejected Nurse Smolinski's medical opinions. (Def.'s Opp'n at 4.) The Court disagrees.

In the hearing decision, the ALJ explains that he assigned little weight to the medical source statement of Nurse Smolinski and Dr. Kobashi because it was "inconsistent with the claimant's admitted ability to walk well," and her activities of daily living. AR 25. The statement was also discounted because it did not describe how Plaintiff's alcohol consumption contributed to the described limitations. *Id.* The ALJ then assigned no weight to Nurse Smolinski's December 2016 medical source statement because the restrictions noted were more severe, and "she did not explain the change in her opinion that was proffered 10 months prior." *Id.* Here, the ALJ erred for three reasons. First, the ALJ did not acknowledge that Nurse Smolinski was Plaintiff's primary care provider, who saw her every one-to-three months, and provided four years of progress notes. *See* AR 512. Second, while Plaintiff was counseled not to consume any alcohol, by the time of the source statements and the hearing, Plaintiff was, on average, consuming one alcoholic beverage per week. AR 49, 526. While alcohol should not be consumed by those with liver problems, the fact that the source statements did not address her de minimus alcohol consumption appears, at first blush, to be trivial.

Third, Nurse Smolinski explained in the December 12, 2016 medical source statement, and the incorporated treatment notes from the same date, show that Plaintiff's condition had worsened. For example, Nurse Smolinski noted that Plaintiff continued to experience severe, chronic abdominal pain and that she had begun experiencing frequent falls since the prior source statement. AR 524. Furthermore, Plaintiff was now experiencing weakness in her hands due to encephalopathy, which adversely affected her fine motor skills. AR 524. Nurse Smolinski's incorporated progress notes provided that Plaintiff reported more swelling in her legs recently, and that her neck and back pain flares have limited her mobility by making it more difficult to climb

14

stairs and complete household tasks, such as laundry. AR 525. Thus, the ALJ's statement that Nurse Smolinski did not explain her rationale for the additional restrictions is inaccurate, and, therefore, is not a germane reason to discount her opinion.

On February 12, 2015, Dr. Lewis performed a consultative, internal medicine examination, which was afforded great weight because it was "well supported by the objective medical evidence that demonstrates mild pancreatitis, her undetectable hepatitis C viral load after treatment, the resolved lower extremity edema, her normal gait, intact strength in the upper and lower extremities, the fact that her pain is well controlled with medication and the extent of the claimant's activities of daily living." AR 25. Based on the entire administrative record, however, Plaintiff's condition appears to have worsened since Dr. Lewis's consultative evaluation. *See generally* Background, *supra*, Part I. The ALJ does not acknowledge this fact. Rather, he notes that Plaintiff's activities of daily living suggest that she is more capable than opined by her treating medical provider. AR 25.

Thus, the Court finds that the ALJ's failure to properly consider Nurse Smolinski's opinion regarding Plaintiff's condition and RFC is not harmless, since a reasonable ALJ, when fully crediting her opinion, could have reached a different disability determination. *See Zimmerman v. Colvin,* 628 Fed. Appx. 556, 557 (9th Cir. 2016). Accordingly, the case must be remanded at step three for further proceedings.

### C. The ALJ erred in discrediting and ignoring the evidence in the treatment notes and selectively relying on records indicating improvement and relatively intact daily activities.

Plaintiff argues that the ALJ erred in discrediting and ignoring the medical evidence that showed that her condition worsened. (Pl.'s Mot. at 23.) Instead, the ALJ discounted Plaintiff's subjective complaints, finding them not credible based on her activities of daily living. (Pl.'s Mot. at 26.) Defendant contends the ALJ properly evaluated the medical evidence and made the determination that Plaintiff's alleged limitations were not credible. (Def.'s Opp'n at 6-7.)

As discussed above, the ALJ did not properly consider the medical evidence provided after Dr. Lewis's consultative evaluation, which tended to show that Plaintiff's condition had worsened, including the medical source statements from Nurse Smolinski. *See* discussion, *supra,* Part IV.B.

15

Accordingly, the Court need not address this argument further, as the case is subject to remand for further proceedings on other grounds. Notwithstanding, the ALJ's contention that Plaintiff's ability to attend her son's baseball games is somehow inconsistent with her alleged limitations is unavailing, as the medical record provides that she is capable of sitting for extended periods of time.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is GRANTED, Defendant's cross-motion for summary judgment is DENIED, and this action is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings, consistent with this order. Specifically, the remand shall include a new internal medicine consultative evaluation, and a new administrative hearing.

The Clerk of the Court shall close this case.

IT IS SO ORDERED.

Dated: March 28, 2019

KANDIS A. WESTMORE
United States Magistrate Judge